Dear Mr. Landry:
You advise that in November of 2007 the St. Bernard Parish Council created the St. Bernard Parish Hospital Service District pursuant to Ordinance SBPC #797-11-07. This Ordinance also sets forth qualification requirements and selection procedures for a five member Board of Commissioners governing the hospital service district. The Council in fact appointed five members to the district board, pursuant to the terms of the Ordinance.
Since that time, conflict has arisen between the Council and the members of the hospital service district board, prompting the Council to consider the removal of members of the board. The St. Bernard Parish Council now asks the following: (1) Is there a way to remove the members of the hospital service district board without declaring "for cause" under La.R.S. 46:1053(C)(3); if not, are there any prescribed procedures to remove them for cause?; and (2) Is it allowed for the Council to appoint council members to the hospital service district board?
A response to these questions requires an examination of the larger issue, specifically, is the St. Bernard Parish Council, as a post-1974 home rule charter entity, empowered to adopt an ordinance which alters the selection and removal *Page 2 
process for the hospital service district board of commissioners established by La.R.S. 46:1053? We conclude that the St. Bernard Parish Council is subject to the provisions of La.R.S. 46:1053, despite its home rule charter status. As more fully explained below, those portions of Ordinance SBPC #797-11-07 which are inconsistent with both the state constitution and the terms of the St. Bernard Parish Home Rule Charter are invalid.
I. St. Bernard Parish Government, as a home rule charter governmentadopted after the enactment of the 1974 Louisiana Constitution, may notadopt an ordinance which is denied by general law, inconsistent with theconstitution, or inconsistent with the terms of its charter.
St. Bernard Parish is governed by the provisions of a home rule charter, adopted by the parish electorate in 1988, after the enactment of the 1974 Constitution. The powers afforded a post-1974 home rule charter government are more limited than the powers afforded a home rule charter government in existence prior to 1974. La.Const. Art. VI § 4 "grants every preexisting home rule government . . . the power of immunity from the control of the legislature . . . except as inconsistent with the 1974 Constitution . . ." See City of New Orleans v. Board of Commissioners ofthe Orleans Levee District, 640 So.2d 237, 245.
"On the other hand, local governmental subdivisions that acquire home rule powers after the adoption of the [1974] constitution do not enjoy the same degree of immunity from control by the legislature. Article VI, § 5 authorizes any such local governmental subdivision to adopt a home rule charter providing for the exercise of any power "necessary, requisite, or proper for the management of its affairs, not denied bygeneral law or inconsistent with this constitution." City of NewOrleans, supra, at page 246.
St. Bernard Parish, as a post-1974 home rule charter government, is subject to La.Const. Art. VI § 5(E). Under Art. VI, "home rule" does not mean complete autonomy but rather it is a rule by which local government has the freedom and flexibility to manage its own local affairs without undue legislative influence. Kean, Local Government andHome Rule, 21 Loy. L.Rev. 63, 66 (1975). Under Article VI, the state is supreme on state-wide concerns, but it allows a home rule government to exercise any necessary power or function except as may be expressly limited by its charter and the general laws, or as may be inconsistent with other provisions of the Constitution. See Miller vs. Oubre, 96-2022 (La. 10/15/96) 682 So.2d 231, 236.
The foregoing discussion reflects that the St. Bernard Parish Council may not enact an ordinance which is denied by general law, inconsistentwith the Constitution, nor as may be limited by the terms of itscharter. Bearing these limitations in mind, a conclusion as to whether the St. Bernard Parish *Page 3 
Government may enact a valid ordinance which differs from La.R.S.46:1053 requires us first to examine, in general, those statutes governing hospital service districts.
II. Ordinance SBPC #797-11-07 is inconsistent with La.Const. Art. VI§ 9(B), as the right to legislate hospital service districts underLa.R.S. 46:1051, et seq., is within the police power reserved to thestate.
Pursuant to La.R.S. 46:1051 (A), "the police juries of parishes are authorized and empowered, upon their own initiative, to form and create one or more hospital service districts within the respective parishes . . . " An argument has been advanced that because the language of La.R.S.46:1051 (A) references "police juries", all the provisions of the hospital service district law, La.R.S. 46:1051, et seq., govern only police juries and not home rule charter entities. Following this reasoning, the St. Bernard Parish Council would be empowered to enact an ordinance providing for a selection and removal process of the hospital district commissioners which differs from that provided by La.R.S. 46:1053.
A similar argument was rejected by the court in Yoes v St. CharlesParish Council, 400 So.2d 260 (La.App. 4th Cir. 1981). In Yoes, the court concluded that the St. Charles Parish government, a post-1974 home rule charter entity, did not possess the authority to disregard the state law on the selection of an official journal, despite the language of La.R.S.43:141, et seq., which referenced "police juries" and not home rule charter entities. The court stated:
 While it may be argued that § 141 refers only to police juries and not to other forms of parochial government which may be created under a home rule charter, it is apparent that the term "police juries" is used synonymously with the term "governing authority" of the parish. This may be readily perceived from the statutory scheme of Title 43 as well as the provisions of § 143 which clear up some of the confusion which may result from § 141. Yoes, at 262.
The court in Yoes pronounced that the selection of an official journal comes within the police power of the state under La.Const. Art. VI § 9(B). Thus, the St. Charles Parish Council was without authority to enact a selection process for an official journal other than that provided for in La.R.S. 43:141, et seq.
The analysis of the court in Yoes is applicable to hospital service districts. The provisions of La.R.S. 46:1051, et seq., are considered "general law" and are applicable to all hospital service districts throughout the state, regardless of the system of government adopted by a particular parish. "General law" is defined in La.Const. Art. VI, § 44(5): *Page 4 
 "General law" means a law of statewide concern enacted by the legislature which is uniformly applicable to all persons or to all political subdivisions in the state or which is uniformly applicable to all persons or to all political subdivisions within the same class.
Further, hospital service districts are formed to operate hospitals and to provide medical care to persons within the district who are suffering from illnesses or disabilities. See La.R.S. 46:1052(1). These objectives fall within the "police power" reserved to the state under La.Const. Art. VI § 9(B). "Although the police power is not susceptible to precise definition except on a case by case basis, it has been described generally as the inherent power of the state to govern persons and things, within constitutional limits, for the promotion of general security, health, morals and welfare". See Francis v. Morial,455 So.2d 1168, 1172 (La. 1984).
La.Const. Art. VI § 9(B) states that "[n]otwithstanding any provision of this Article, the police power of the state shall never be abridged." An ordinance in conflict with the police powers reserved to the state by La.Const. Art. VI § 9 is invalid. See Yoes, supra, and New OrleansCampaign For a Living Wage v. City of New Orleans, 2002-0991 (La. 9/4/02) 825 So.2d 1098.
Having determined that La.R.S. 46:1053 is general law applicable to all hospital service districts and parish governing authorities, enacted by the legislature pursuant to its police power, it follows that an ordinance which alters the selection or removal process of the members of the board, or provides for qualifications other than those provided for by statute, is in contravention of La.Const. Art. VI § 9(B).
La.R.S. 46:1053(A) provides that "any hospital service district formed or created under the provisions of this Chapter shall be governed by a board of five commissioners, hereafter referred to as commission, who shall be qualified voters and residents of the district . . ." As to the terms of office, La.R.S. 46:1053(A) states "two of the first commissioners so appointed shall serve for two years, two for four years and one for six years". La.R.S. 46:1053(C)(1)(a) provides "at the expiration of their respective terms of office, the successors to such appointees shall be appointed within thirty days for six-year terms. The police juries shall fill vacancies in the same manner as the predecessor appointees were selected". Once appointed, La.R.S. 46:1053(C)(3) provides "any member of the commission may be removed from office for cause and his appointment rescinded by two-thirds vote of the elected membership of the parish governing authority which appointed him".
The method of appointment to the board of commissioners governing the St. Bernard Parish hospital service district provided for in Ordinance SBPC #797-11-07 *Page 5 
differs in several respects from the appointment procedures provided for by La.R.S. 46:1053. Regarding the appointment of the initial board of commissioners, the Ordinance requires the Council to solicit and accept a combined total of eight nominations for commissioners from the governing authority of the St. Bernard Medical Society and St. Bernard Health Center, Inc.[1] The Ordinance further stipulates "at least two of the persons nominated shall be licensed physicians practicing medicine in St. Bernard Parish at the time of their nomination".[2] The Ordinance also requires the Council to appoint five commissioners from the list of eight nominees, "one of whom shall be licensed practicing medicine in St. Bernard Parish at the time of appointment."[3]
Those provisions of the Ordinance addressing the procedures to fill a vacancy on the board also differ from the provisions of La.R.S.46:1053(C)(1)(a). When a vacancy occurs involving a non-physician member of the Board of Commissioners, the Ordinance requires the Council to solicit and accept a list of three nominations for each vacancy from the governing authority of the St. Bernard Medical Society and St. Bernard Parish Health Clinic.[4] The successor commissioner is required to be appointed by the Council from the list of three nominations. When a vacancy occurs involving a physician member of the board of commissioners, of the Ordinance requires the Council to solicit and accept a list of three nominations, each of whom shall be a licensed physician practicing medicine in St. Bernard Parish at the time of nomination, from the governing authority of the St. Bernard Medical Society and St. Bernard Health Center.[5] The successor commissioner is required to be appointed by the Council from the list of three nominations.
The only qualification requirements imposed by La.R.S. 46:1053(A) are that members of the board of commissioners be qualified voters and residents of the district. The provisions imposed by the Ordinance requiring the Council to make appointments to the board of commissioners from a list of nominees provided by medical institutions, and that two of the nominees must be "licensed practicing medicine in St. Bernard Parish" are qualifications which are not authorized by statute. Further, there is no provision in La.R.S. 46:1053(A) requiring that one member of the hospital service district board be "licensed practicing medicine in St. Bernard Parish at the time of appointment" as Section 3(A)(3) of the Ordinance requires.
Similarly, the procedures to fill a vacancy for a "non-physician" member and a "physician" member contradict the language of La.R.S.46:1053(C)(1)(a), *Page 6 
directing a parish governing authority to "fill vacancies in the same manner as the predecessor appointees were selected" under La.R.S.46:1053(A), which imposes no particular qualification requirements other than that the Council appoint members who are qualified voters and residents of the district.
La.R.S. 46:1053 governs the appointment of the member of the St. Bernard Parish Hospital Service District. Those portions of Ordinance SBPC #797-11-07 which differ from La.R.S. 46:1053 are considered invalid, and are severable from the remaining text which validly creates the hospital service district pursuant to La.R.S. 46:1051. The unconstitutionality of one portion of a law does not render the entire law unenforceable if the remaining portion is severable from the offending portion. See Cox Cable New Orleans, Inc. vs. City of NewOrleans, 624 So.2d 980 (La. 1993), at page 895.
Ordinance SBPC #797-11-07 is also in violation of the terms of the home rule charter governing St. Bernard Parish. In Article I, Section 1-04 of its home rule charter, St. Bernard Parish recognized the limitations on its power and provided that the Parish would only have such powers that were not "inconsistent with this Charter" and "not denied by this charter and neither denied by nor inconsistent with the constitution, statutes, and laws of the State of Louisiana". An ordinance which is "inconsistentwith the constitution, statutes, and laws of the State of Louisiana" is impermissible by the very terms of the charter governing St. Bernard Parish. See Article I, Section 1-04.
This office previously found invalid an ordinance changing the requirements of La.R.S. 46:1053 enacted by another home rule charter government. In La. Atty. Gen. Op. 96-105, this office concluded that the Ascension Parish Council could not change the number of the board of commissioners of a hospital service district as set forth by statute without statutory amendment. Thus, any departure from the statutory provisions regarding the qualification requirements of those appointed to the hospital service district board, and any alteration to the manner of selection of removal of the board members, may not be accomplished by ordinance, but rather requires legislative amendment to La.R.S. 46:1053.
Several home rule charter governments have imposed additional qualifications upon the members of a hospital service district board, as well as changing the number of board members, and have accomplished same by legislative amendment. See La.R.S. 46:1053(B)(1), St. Mary Parish; La.R.S. 46:1053(B)(4)(a), Iberia Parish; La.R.S. 46:1053(D)(1), Washington Parish; La.R.S. 46:1053(M)(1), Terrebonne Parish; La.R.S.46:1053(N)(1)(a), Caddo Parish; La.R.S. 46:1053(0), St. Landry Parish; La.R.S. 46:1053(X), Plaquemines Parish; La.R.S. 46:1053(Y), East Baton Rouge Parish. *Page 7 
It is our recommendation that St. Bernard Parish must similarly seek legislative amendment to La.R.S. 46:1053 to make legally effective those provisions of Ordinance SBPC #797-11-07 which differ from La.R.S.46:1053. Despite our conclusion, we do not mean to say that the current membership is illegal for having been effected under the terms of this ordinance. Where the membership meets the requirements of La.R.S.46:1053 (and there is no suggestion otherwise) these members validly hold office.
III. Members of the hospital service district board may only beremoved for cause under La.R.S. 46:1053(C)(3).
La.R.S. 46:1053(C)(3) permits removal of a member of the hospital service district board only for cause and only then by a two-thirds vote of the elected membership of the council. The case of Giamanco vs.Pizzolato, 275 So.2d. 880 (La.App. 4th Cir. 1973), directs that the police jury (and as applicable here, the Council as parish governing authority) may not simply remove members from the hospital service district board. In Giamanco, the St. Charles Parish Police Jury removed two hospital service district commissioners from office prior to the end of their terms and without cause. The police jury then reconstituted the board so that every police jury ward in the hospital service district was represented. The court ordered the two removed Commissioners reinstated and enjoined the police jury from removing them except for cause, stating:
 The above quoted portion of Act 612 of 1972 is clear and unambiguous. It does not require removal of a member of the commission; it permits such removal by the parish governing authority if that authority desires to remove. But it permits removal only for cause and only then by a two-thirds vote of the elected membership of the authority. In the instant case, as there is no suggestion that the plaintiffs or either of them have given any cause for their removal, the requirements for removal under Act 612 of 1972 have not been met. Giamanco, at 883.
Paradoxically, the St. Bernard Parish Council is empowered to abolish the hospital service district pursuant to La.Const. Art. VI § 15, providing:
 The governing authority of a local governmental subdivision shall have general power over any agency heretofore or hereafter created by it, including, without limitation, the power to abolish the agency and require prior approval of any charge or tax levied or bond issued by the agency. *Page 8 
The power to abolish the hospital service district does not permit the St. Bernard Parish Council to remove members of the hospital service district board without cause. Interpreting the power afforded a home rule charter government under La.Const. Art. VI § 15, this office advised the Ascension Parish Council that while the Council could abolish the hospital service district, the Council could not disband the board of commissioners of the hospital service district in order to appoint a new board. See La. Atty. Gen. Op. 96-39.
Further, in La. Atty. Gen. Op. 91-27, this office advised the Franklin Parish Police Jury of its power to abolish the hospital service district under La.Const. Art. VI § 15, with the limitation that the police jury could only remove the hospital service district commissioners for cause; otherwise, "such usurpation would abrogate the police power of the state, reserved by Art. VI, Sec. 9B of the Louisiana Constitution, to govern persons and things to promote order, safety, health, comfort and the general welfare of society . . .The police power, however delegated, always remains vested with the state; the state retains the right to recall, abrogate or modify the delegation" citing Board of Commissionersv. Dept. of Natural Resources, 496 So.2d 281, 289 (La. 1986] .
Here, we pause to direct your attention to La. Atty. Gen. Op. 93-479, which contains an extensive analysis of the genesis of La.Const. Art. VI § 15. In this opinion, the author addressed the authority of Catahoula Parish Police Jury over its hospital service district under La.Const. Art. VI § 15. Referenced in the opinion is the case of Brasseaux v.Vermilion Parish Police Jury, 361 So.2d 35 (La.App. 3rd Cir. 1978) writden. 363 So.2d 535 (La. 1978), in which the court held that the Vermilion Parish Police Jury's right to abolish a gravity drainage district agency did not include the power to remove individual members. The author of La. Atty. Gen. Op. 93-479 cites Brasseaux for the proposition that the "general power" provision of La.Const. Art. VI § 15, did not expand the powers of a police jury beyond what was already contained in the 1921 Constitution and, therefore, "did not give a police jury the right, for example, to remove individual members of agencies". See La. Atty. Gen. Op. 93-479.
As reasoned in Giamanco, and the previous opinions of this office, the St. Bernard Parish Council may only remove members of the hospital service district board for cause, with two-thirds vote of the Council, in accord with La.R.S. 46:1053(C)(3). The current members of the St. Bernard Parish Hospital Service District Board are entitled to remain in office until the expiration of their terms or until removal for cause under La.R.S. 46:1053(C)(3). *Page 9 
 IV. Removal for cause under La.R.S. 46:1053(C)(3), while notstatutorily defined, has been interpreted to include the conviction of afelony while in office, malfeasance, and gross misconduct while inoffice.
What constitutes "cause for removal" of a hospital service district commissioner in La.R.S. 46:1053(C)(3) is not statutorily defined. Further, there is no jurisprudence which defines what "cause" means for removal pursuant to La.R.S. 46:1053(C)(3). However, this office has attempted to define those instances constituting cause for removal in Opinions 78-1196 and 80-1594A, which we attach for your review. Both opinions stand for the proposition that removal of a hospital service district commissioner "for cause" under R.S. 46:1053(C)(3) includes the conviction of a felony while in office, malfeasance, and gross misconduct while in office.
V. Council members may be appointed to serve on the hospital servicedistrict board when vacancies occur.
We now turn to your question regarding the appointment of council members to the hospital service district board. La.R.S. 46:1053(A) states the board "shall be appointed by the police jury of the parish." La.R.S. 42:64 prohibits dual officeholding where the incumbent of one of the offices appoints incumbents to the other office. However, the following exception is contained in La.R.S. 42:64(A)(1):
 A. In addition to the prohibitions otherwise provided in this Part, no other offices or employments shall be held by the same person in combination if any of the following conditions are found to pertain and these prohibitions shall exist whether or not the person affected by the prohibition exercises power in conjunction with other officers:
 (1) The incumbent of one of the offices, whether or not in conjunction with fellow officers, or employment has the power to appoint or remove the incumbent of the other, except that local governmental subdivisions may appoint members of the governing body to boards and commissions created by them and over which they exercise general powers as provided in Article VI, Section 15 of the Constitution of Louisiana . . .
(Emphasis added).
The legislature has empowered the St. Bernard Parish governing authority to create a hospital service district pursuant to La.R.S. 46:1051; the Council has the authority to abolish the district as provided by in La.Const. Art. VI, § 15. La.R.S. 42:64(A)(1) permits a "local governmental subdivision" to appoint members *Page 10 
of its governing body to a board "over which they exercise general powers as provided in Article VI, Section 15". The exemption is applicable in the instant matter, and permits the St. Bernard Parish Council to appoint council members to the hospital service district board when a vacancy occurs. In accord is La. Atty. Gen. Op. 96-446 (the Ascension Parish Council may appoint two council members to serve on the Hospital Service District Board for Ascension Parish), and La. Atty. Gen. Op. 00-43 (a member of the St. Martin Parish Council may serve on the board governing the St. Martin Parish Hospital District No. 2).
VI. St. Bernard Parish Council may become the governing authority ofthe hospital service district upon the approval of a majority of theelectors voting at a special election called to consolidate the districtinto the parish.
As discussed, the right to abolish the hospital service district granted a parish governing authority by La.Const. Art. VI § 15 does not authorize the St. Bernard Parish Council to remove members of the existing hospital service district board. However, the St. Bernard Parish Government may abolish the hospital service district (eliminating the current board entirely) and proceed to consolidate and merge into itself the hospital service district as provided in La.Const. Art. VI § 16:
 16. Special Districts and Local Public Agencies
 Section 16. (A) Consolidation. A local governmental subdivision may consolidate and merge into itself any special district or local public agency, except a school district, situated and having jurisdiction entirely within the boundaries of the local governmental subdivision. Upon the consolidation and merger, the local governmental subdivision shall succeed to and be vested with all of the rights, revenues, resources, jurisdiction, authority, and powers of the special district or local public agency. A consolidation and merger shall become effective only if approved by a majority of the electors voting thereon in the local governmental subdivision as a whole and by a majority of the electors voting thereon in the affected special district. A local public agency shall be consolidated and merged only if approved by a majority of the electors voting thereon in an election held for that purpose in the local governmental subdivision in which the agency is located.
 (B) Assumption of Debt. If the special district or local public agency which is consolidated and merged has outstanding indebtedness, the authority provided by this Section shall not be exercised unless provision is made for the assumption of the indebtedness by the governing authority of the local governmental subdivision involved. *Page 11 
[Emphasis added].
The provisions of La.Const. Art. VI § 16 require the Council to call a special election, in order to make the St. Bernard Parish Government the governing authority of the hospital service district. Similar requirements are found in Article VII, Section 7-09(b) of the St. Bernard Parish home rule charter:
 (b) The parish government may consolidate and merge into itself any special district or local public agency, except a school district, situated and having jurisdiction entirely within the boundaries of the parish. Upon the consolidation and merger, the parish government shall succeed to and be vested with all of the rights, revenues, resources, jurisdiction, authority, and powers of the special district or local public agency. A consolidation and merger shall become effective only if approved by a majority of the electors voting thereon in the parish as a whole and by a majority of the electors voting thereon in the affected special district. A local public agency shall be consolidated and merged only if approved by a majority of the electors voting thereon in the parish as a whole.
[Emphasis added].
Note that in merging with the hospital service district, the St. Bernard Parish Council also assumes the debt of the district, under La.Const. Art. VI § 16(B). See also La.R.S. 39:661, providing "any parish may assume the debt of any . . . hospital service district . . . in the manner and subject to the limitations contained in this Sub-part"; further, see La.R.S. 33:1415(A), providing that where a parish governing authority abolishes a district "that where any indebtedness of any such board, commission, agency, district, office, government, or any entity whatever having governmental functions, is outstanding, the authority herein provided shall not be exercised until provision is made for the assumption of such indebtedness in the manner provided by law".
Note that if the St. Bernard Parish Council decides to pursue the abolishment and consolidation of the hospital service district, and if in fact there exists debt which the parish will assume, the Council must take care that the language of the proposition comply with La.R.S.18:1284(D), stating "the proposition submitted to the voters shall state the amount and nature of the debt to be assumed". *Page 12 
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY:__________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
 KLK:arg
[1] See Section 3(A)(1) and (2).
[2] See Section 3(A)(2).
[3] Section 3(A)(3).
[4] Section 3(B)(1).
[5] Section 3(B)(2).